# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN T. SANCHEZ, | Case No. 1:20-cv-00533-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

_____/

## I.   INTRODUCTION

On April 14, 2020, Plaintiff Juan T. Sanchez ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.   BACKGROUND

On August 24, 2016, Plaintiff protectively applied for a period of disability and DIB, alleging disability beginning September 15, 2009, due to traumatic brain injury, bilateral hearing loss, carpal tunnel in both hands, tinnitus, ACL in right knee, PTSD, and depression. (Administrative Record ("AR") 26, 83, 105, 112, 190, 196, 212, 231, 316, 227.) Plaintiff was born on June 14, 1980, and was 29 years old on the alleged disability onset date. (AR 26, 36, 83, 94, 196, 216, 231.) Plaintiff has a high school education and can communicate in English. (AR 36, 52, 189, 191, 218, 233.)

**A.   Relevant Medical Evidence[3]**

**1.   Fresno VA Medical Center**

On May 8, 2014, Plaintiff presented to the psychiatric department of the Fresno VA Medical Center for a follow-up appointment with Peter Leong, M.D. (AR 902–05.) Plaintiff reported that medication was helping him sleep and he felt "calmed when waking up." (AR 904.) His mental status examination showed he was cooperative, adequately groomed, and goal-directed, with no delusions or psychomotor agitation. (AR 904.) Plaintiff's mood was "ok," his affect appropriate, and he was cognitively grossly intact, with no suicidal or violent thoughts. (AR 904.)

Plaintiff presented to the internal medicine department on June 4, 2014, with a history of psychological and substance abuse disorders, as well as chronic pain in his neck, shoulder, knees, and back. (AR 871–72.) He indicated that his worst pain is in his right knee, which got worse with movement. (AR 871.) Following an examination, Plaintiff was assessed with acute chronic right knee pain and was directed to use a knee sleeve when active. (AR 873.) Plaintiff's chronic pain was "likely due to depression," with his joint X-rays normal and no significant findings on his physical examination "except for possible osteopenia" of his lumbar spine. (AR 874.) Plaintiff was also recommended to resume using a wrist brace for his carpal tunnel syndrome. (AR 874.)

On September 23, 2014, Plaintiff was assessed by psychiatrist Roy Roque, M.D., with

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 12.)

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

depression and PTSD. (AR 816–17.) Upon examination, Plaintiff was observed to be in "fair" spirits, with "restrained" range of affect but not irritable. (AR 816.) He had "spontaneous interaction" and "productive replies." (AR 816.) Plaintiff's speech rate was within normal limits, with linear thought processes and no manic or psychotic signs. (AR 816.)

### 2. State Agency Physicians

On January 9, 2017, W. Jackson, M.D., a state agency physician, reviewed the record and assessed Plaintiff's residual functional capacity (RFC).[4] (AR 83–92.) Dr. Jackson found that, from August 1, 2013 through December 31, 2014, Plaintiff could occasionally lift and/or carry 20 pounds and frequently 10 pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; perform unlimited pushing and pulling, subject to the above lift-and-carry restrictions; occasionally kneel and crouch; frequently climb ladders, ropes, or scaffolds; and was limited to frequent bilateral handling and fingering due to his carpal tunnel syndrome. (AR 89–91.) Upon reconsideration on April 5, 2017, another state agency physician, E. Wong, M.D., reviewed the record and affirmed Dr. Jackson's findings. (AR 94–103.)

State agency physician E. Aquino-Caro, M.D., reviewed the record on January 5, 2017, and found insufficient evidence of a severe mental impairment. (AR 88.) Upon reconsideration on April 11, 2017, another state agency physician, J. Foster-Valdez, M.D., reviewed the record and affirmed Dr. Aquino-Caro's finding of insufficient evidence. (AR 97–98.)

### 3. Michele Maison-Fomotar, M.D. and Hau Nguyen, M.D.

On August 14, 2018, internal medicine resident Dr. Maison-Fomotar completed a medical source statement titled "PHYSICAL Residual Function Capacity," which was co-signed by Plaintiff's primary care physician, Dr. Nguyen.[5] (AR 1513–16, 1591–94, 1602.) Drs. Maison-Fomotar and Nguyen noted chronic low back pain and patellar chondromalacia in both of Plaintiff's

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

[5] Dr. Maison-Fomotar also submitted the same medical source statement separately. (*See* AR 1509–12.)

knees. (AR 1513.) They opined Plaintiff can lift five pounds frequently, 10 pounds occasionally, 15 pounds rarely and 20 pounds never. (AR 1513.) He can carry less than five pounds frequently, l0 pounds occasionally, l5 pounds rarely, and 20 pounds never. (AR 1514.) According to Drs. Maison-Fomotar and Nguyen, Plaintiff can sit only about two hours in an eight-hour workday. (AR 1514.) They opined Plaintiff can stand and walk only less than one hour in an eight-hour workday. (AR 1514.) He would be absent from work or be unable to complete an eight-hour workday five days or more per month. (AR 1516.)

### 4.    Mary Jordan-Church, LCSW

On August 27, 2018, treating clinician Mary Jordan-Church, LCSW, completed a medical source statement titled "MENTAL Residual Functional Capacity." (AR 1530–33.) LCSW Jordan-Church opined that since September 15, 2009, Plaintiff was precluded from performance for 15% or more of an eight-hour workday in the following areas: understanding and remembering very short and simple instructions and detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; being punctual and within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being distracted by them; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; responding appropriately to changes in the work setting; traveling in unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others. (AR 1530–32.) She further opined that Plaintiff was likely to be absent from work for five days or more per month, and would be unable to obtain and to retain full-time work for a continuous period of more than six months. (AR 1532–33.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on January 12, 2017,

4

and again on reconsideration on April 13, 2017.  (AR 105–08; AR 112–16.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 117–32.)  The ALJ conducted a hearing on January 30, 2019.  (AR 42–82.).  Plaintiff appeared at the hearing with his counsel and testified as to his alleged disabling conditions and work history.  (AR 49–75.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as an airframe and power plant mechanic, Dictionary of Operational Titles (DOT) code 621.281-014, which was medium work (heavy as performed), with a specific vocational preparation (SVP)[6] of 7; and as a police officer, DOT code 375.263-014, medium work, with an SVP of 6.  (AR 76.)  The ALJ asked the VE to consider a person of Plaintiff's age, education, and with his work experience.  (AR 76.)  The VE was also to assume this person: could lift or carry 20 pounds occasionally and ten and pounds frequently; can stand or walk at least six out of eight hours; can sit for at least six out of eight hours; can frequently climb ladders and scaffolds; can only occasionally kneel and crouch; can frequently bilaterally handle and finger; is limited to simple and routine tasks; can have only occasional contact with supervisors and coworkers, but not in a teamwork setting; can have no more than incidental contact with the general public; would need a ten-minute break every two hours; would be limited to routine work-related decision-making in a static work environment; and could never be exposed to noises louder than traffic on a city street.  (AR 76–77.)  The VE testified that such a person could not perform Plaintiff's past relevant work, and could perform other, light, and unskilled jobs in the national economy, such as routing clerk, DOT code 222.687-022 with an SVP of 2; marker, DOT code 209.587-034 with an SVP of 2; and "housekeeping, cleaner," DOT code 323.687-014 with an SVP of 2.  (AR 77–78.)

The ALJ asked the VE, in a second hypothetical, to consider the individual presented in the first hypothetical with the added limitation that such person would need two 15-minute breaks in addition to those breaks normally and regularly scheduled throughout the day.  (AR 78.)  The VE

---

[6] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id*.

testified that there would be no work such person could perform.  (AR 78.)

For a third hypothetical, the ALJ asked the VE to consider the individual presented in the first hypothetical with the added limitation that the person would need to be reminded to stay on task once per half hour by a supervisor.  (AR 78.)  The VE testified that such limitation would preclude all work.  (AR 78.)  Finally, in a fourth hypothetical, the ALJ asked the VE to consider the individual presented in the first hypothetical with the added limitation that they, on an occasional basis (*i.e.*, one-third of the time), would be unable to relate in a professional manner to coworkers.  (AR 78–79.)  According to the VE, there would be no work such a person could perform.  (AR 78–79.)

**C.     The ALJ's Decision**

In a decision dated May 1, 2019, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 21–37.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 23–37.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of September 15, 2009, though his date last insured of December 31, 2014 (step one).  (AR 23–24.)  The ALJ found that Plaintiff had the following severe impairments: degenerative joint disease of the right knee, bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome/right elbow epicondylitis, right shoulder tendonitis, mild hearing loss, tinnitus, exogenous obesity, traumatic brain injury, mild neurocognitive disorder, posttraumatic stress disorder (PTSD), major depressive disorder/substance induced mood disorder, and generalized anxiety disorder (step two).  (AR 24.)  However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 24–25.)  The ALJ then assessed Plaintiff's RFC and applied that assessment at step four.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").

The ALJ determined that Plaintiff retained the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567 (b), including lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking for six hours; and sitting for six hours in an eight-hour workday, with the following restrictions: he could frequently climb ladders and scaffolds. He could occasionally kneel and crouch. He could frequently handle and finger bilaterally. He could perform simple and routine tasks. He could have occasional contact with supervisors and coworkers, but he could not perform work in a teamwork setting. He could have no more than incidental interaction with the public. He needed a 10-minute break every two hours. He was limited to routine work-related decision-making in a static work environment. He could not be exposed to noises louder than traffic on a city street.

(AR 25–35.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 27.)

The ALJ determined that, given his RFC, Plaintiff could not perform his past relevant work (step four), but that he could perform a significant number of other jobs in the local and national economies, specifically routing clerk, marker, and housekeeping cleaner (step five). (AR 36–37.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on February 16, 2020. (AR 7–12.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.    LEGAL STANDARD

#### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining

whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.

The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec.*

*Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins*, 466 F.3d at 885). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.     DISCUSSION

Plaintiff contends that the ALJ erred in his treatment of the opinions of Drs. Maison-Fomotar and Nguyen and of LCSW Jordan-Church, resulting in an RFC that is not supported by substantial evidence. (*See* Doc. 19 at 10–15; Doc. 23 at 3–4.) Defendant counters that the ALJ

properly reviewed the record and resolved the conflicting opinion evidence, resulting in a finding supported by substantial evidence.  (*See* Doc. 22 at 6–13.)

**A.     The ALJ Erred in His Evaluation of the Medical Opinion Evidence**

    **1.     Legal Standard**

        **a.     Drs. Maison-Fomotar and Nguyen**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010).  An ALJ may reject an uncontradicted opinion of a treating medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 830.  In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830.  "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).  "The ALJ must do more than state conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

"[E]ven when contradicted, a treating physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).  The

10

regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund*, 253 F.3d at 1157[7], except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

    **b.**  **LCSW Jordan-Church**

Unlike "acceptable medical sources" Drs. Maison-Fomotar and Nguyen, licensed clinical social workers like LCSW Jordan-Church are considered "other" medical sources. *See* Social Security Ruling ("SSR") 06–03p (noting that medical sources who are not "acceptable medical sources" include licensed clinical social workers); *see also Kelly v. Astrue*, 471 F. App'x 674, 676 (9th Cir. 2012 (Social workers are not considered "acceptable medical sources" under the regulations.) The ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 416.913(d). An "other" medical source may not, however, provide medical opinions or be given "controlling" weight as a treating medical source. *See* SSR 06–03p.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id*. at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

///

---

[7] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

11

1  ///

### 2. Analysis of the ALJ's Treatment of the Opinion Evidence

#### a. Dr. Nguyen

Plaintiff alleges, and the record reflects, that Dr. Nguyen was Plaintiff's treating physician beginning in September 2013. (AR 273, 287–88, 301, 331, 353, 428, 566, 597, 617, 911, 1010, 1591–95, 1602.) In August 2018, Dr. Nguyen co-signed a medical source statement titled "PHYSICAL Residual Function Capacity," in which it was opined that, as a result of chronic low back pain and patellae chondromalacia, Plaintiff: can lift five pounds frequently, 10 pounds occasionally, 15 pounds rarely and 20 pounds never; can carry less than five pounds frequently, l0 pounds occasionally, l5 pounds rarely, and 20 pounds never; can sit only about two hours in an eight-hour work day; can stand or walk only less than one hour in an eight-hour work day; and would be absent from work or be unable to complete an eight-hour work day five days or more per month. (AR 1513–16.) Although not specifically identified by the ALJ as a basis for its rejection, Dr. Nguyen's opinion is contradicted by the opinion of non-examining state agency physicians, who opined, *inter alia*, that Plaintiff: could occasionally lift and/or carry 20 pounds and frequently 10 pounds; could stand and/or walk for about six hours in an eight-hour workday; could sit for about six hours in an eight-hour workday; and lacked evidence of a severe mental impairment. (AR 88–91, 94–103.)  Thus, the ALJ was required to set forth "specific and legitimate reasons," supported by substantial evidence, for rejecting Dr. Raju's opinion. *Trevizo*, 871 F.3d at 675.

The ALJ gave Dr. Nguyen's opinion "less weight" because it "was made after [Plaintiff's] date last insured on December 31, 2014," and because Plaintiff "did not have those limitations at the time of the claimant's date last insured, as discussed above," citing AR 874. (AR 131.) These explanations cannot withstand scrutiny.

First, the ALJ's rejection of Dr. Nguyen's opinion solely because it was made after the date last insured is improper. The Ninth Circuit "has specifically held that 'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'" *Lester*, 81 F.3d at 832 (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)); *Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1232 (9th Cir. 2011). Although the opinion was rendered

12

1  over three and a half years after Plaintiff's date last insured, the opinion addresses significant
2  physical limitations, such as Plaintiff's inability to stand or walk for less than one hour in an eight-
3  hour workday.  (AR 1514.)  As the opinion notes (AR 1513), these limitations are related to
4  Plaintiff's right-knee patellar chondromalacia that existed before his date last insured, as evidenced
5  by the fact that the ALJ found the condition to be severe during the relevant time period.  (*See* AR
6  24 (finding "degenerative joint disease of the right knee" a severe impairment).)  Consequently,
7  Dr. Nguyen's opinion is relevant to assess Plaintiff's disability, the ALJ should not have
8  disregarded it solely on the basis that the opinion was rendered after the date last insured.  *See*
9  *Galeck v. Berryhill*, No. 2:18-cv-00131-JDE, 2018 WL 4961651, at *6 (C.D. Cal. Oct. 12, 2018)
10 (rejection of doctor's opinion because it was from after date last insured erroneous); *Herrera v.*
11 *Astrue*, No. EDCV 08-0586-RC, 2009 WL 3247184, at *6-7 (C.D. Cal. Oct. 6, 2009) (finding ALJ
12 could not reject doctor's opinion from nearly three years after date last insured without providing
13 a "specific and legitimate reason" for doing so).  *See also Svaldi v. Berryhill*, 720 F. App'x 342,
14 343–44 (9th Cir. 2017) (concluding that weight of treating physician's opinions were not undercut
15 because they were issued significantly after date last insured where the opinions referred back to
16 same chronic condition and symptoms before date last insured); *Woolsey v. Saul*, No. 2:18-cv-924-
17 EFB, 2019 WL 4670766, at *4 (E.D. Cal. Sept. 25, 2019) (finding a failure to consider doctor's
18 opinion from after date last insured rendered ALJ's decision unsupported by substantial evidence
19 because doctor's opinion related to treatment for conditions that existed before date last insured).

20         The ALJ's remaining finding that Plaintiff did not have the opined limitations at the time
21 of his date last insured is insufficiently supported.  For this finding, the ALJ cites to a single page
22 from the 1,790-page administrative record: a June 2014 treatment note indicating Plaintiff's joint
23 X-rays were normal and no significant findings on his physical examination "except for possible
24 osteopenia" of his lumbar spine.  (AR 874.)  The ALJ does not explain how this single treatment
25 note, which appears to be an improper attempt to "cherry pick" from the record, undermines the
26 functional limitations opined by Dr. Nguyen.[8]  Moreover, the citation of this particular treatment

---

[8] While an ALJ may properly discount a treating physician's opinion that is inconsistent with the medical record, he cannot isolate favorable portions of the record to so.  *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [ALJ] to . . . weigh conflicting evidence, he cannot reach a conclusion first,

note is somewhat odd, considering that the finding of "possible osteopenia" of Plaintiff's lumbar spine appears to be *consistent* with the chronic low back pain that Dr. Nguyen attributed as a cause of Plaintiff's limitations. (*See* AR 1513.) The ALJ cites no other medical evidence to support his finding that Plaintiff lacked Dr. Nguyen's opined limitations at the time of his date last insured, and neither the Court, nor the Commissioner post-hoc, may "comb the administrative record" to find support for his finding. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."). In the absence of any explanation by the ALJ, the Court is unable to determine whether he properly considered all of the medical evidence in rejecting Dr. Nguyen's limitations, and thus that rejection cannot be upheld at this time.[9] *See Garrison*, 759 F.3d at 1012–13 (An ALJ errs by assigning a medical opinion "little weight while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

### b. LCSW Jordan-Church

In her August 2018 medical source statement, Plaintiff's therapist LCSW Jordan-Church opined that Plaintiff was precluded from performance for 15% or more of an eight-hour workday in several areas, was likely to be absent from work for five days or more per month, and would be unable to obtain and to retain full-time work for a continuous period of more than six months. (AR 1530–33.) The ALJ gave "little weight," to these opinions because they were "inconsistent with the medical record and overall evidence," citing AR 816 and 904. Although an ALJ can discredit a social worker's opinions if they are inconsistent with the medical evidence, *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005), in so doing he must identify which part of their opinion is inconsistent with the medical record and specify how. *See Seaman v. Berryhill*, No. 4:16-cv-00027-SLG, 2017 WL 3879084, at *7 (D. Alaska Sept. 5, 2017) ("A conclusory statement that a[]

---

and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result." (citations omitted)); *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (finding that "the ALJ's specific reason for rejecting [a physician's] medical opinion [was] not supported by substantial evidence" because, in part, "the ALJ selectively relied on some entries in [the plaintiff's] records . . . and ignored the many others that indicated continued, severe impairment"); *Reddick*, 157 F.3d at 722–23 (An ALJ may not "cherry pick" from a record to support the conclusion, but rather must account for the context of the whole record.).

[9] As the Court finds that the ALJ erred in his assessment of the medical source opinion co-signed by Dr. Nguyen, it does not reach Plaintiff's additional assertion of error directed to Dr. Maison-Fomotar regarding that same opinion. (*See* Doc. 19 at 13.)

14

[non-medical] opinion is not supported by the record or medical evidence does not suffice.").

This the ALJ did not do. The two pages cited from the 1,790-page record are mental status examination records from September and May 2014, respectively. These records show some normal findings but also document less-than-normal observations, such as "fair" and "ok" mood and "restrained" range of affect. (AR 816, 904.) As before, the ALJ provided no explanation of how the records he cites—or any others—are at odds with LCSW Jordan-Church's opinions. Thus, no germane reason for discrediting the opinions were provided by the ALJ. *See Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (remanding when ALJ had "provided little illumination" of how nurse practitioner's opinions conflicted with other medical evidence in record); *Young v. Colvin*, No. 15-cv-01029-KAW, 2016 WL 5390295, at *8 (N.D. Cal. Sept. 27, 2016) ("The Commissioner . . . did not identify which part of their opinion it believed was inconsistent with the medical record, and the ALJ similarly failed to do so. Therefore, this argument cannot form a basis to reject the social workers' opinions."); *Amirkhanov v. Colvin*, CASE NO. 2:15-cv-01541-DWC, 2016 WL 1567203, at *5 (W.D. Wash. Apr. 18, 2016) (remanding when ALJ's rejection of "other source" opinion was "not sufficiently specific"). *See also Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (holding, "under our law . . . the ALJ [cannot] discredit ... lay testimony as not supported by medical evidence in the record"); *McCann v. Colvin*, 111 F. Supp. 3d 1166, 1175 (W.D. Wash. 2015) (remanding after finding ALJ failed to provide specific, germane reasons for discounting a nurse practitioner's opinion, when ALJ provided no explanation for finding the opinion inconsistent with overall medical record, claimant's daily activities, and work history).

### 3. Harmless Error Analysis

In light of the foregoing, the Court finds that the ALJ failed to provide legally sufficient reasons for rejecting the opinion evidence of Dr. Nguyen and LCSW Jordan-Church. Moreover, the Court cannot conclude that the error below was harmless. *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054). If the ALJ were to have accepted any part of the rejected opinions, the ALJ likely would have reached an RFC determination with greater limitations than those assessed. For example, both Dr. Nguyen and LCSW Jordan-Church opined that Plaintiff was likely to be absent from work five days or more per month (AR 1516, 1532–33), yet the VE testified that

15

requirements such as two additional 15-minute breaks or reminders to stay on task once per half hour would preclude all work. (AR 78.) A substantial likelihood exists that the ALJ's improper rejection of the opinion evidence affected the result and therefore was not "inconsequential to the ultimate nondisability determination," so the error was not harmless. *Molina*, 674 F.3d at 1121–22.

**B.     The ALJ's Error Warrants Remand for Further Proceedings**

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

Having found that the ALJ failed to articulate legally sufficient for rejecting the opinion evidence, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional administrative proceedings will be useful.[10] In particular, the ALJ's RFC determination conflicted with the opinion evidence, and can be remedied with further proceedings to accord an opportunity to the ALJ to resolve this conflict. *Cf. Dominguez v. Colvin*, 808 F.3d 403, 408–09 (9th Cir. 2016); *Lule v. Berryhill*, Case No.: 1:15-cv-01631-JLT, 2017 WL

---

[10] Plaintiff concedes that further administrative proceedings are appropriate in this case. (*See* Doc. 23 at 4.)

16

541096, at *6 (E.D. Cal. Feb. 10, 2017) ("When there is conflicting medical evidence, 'it is the ALJ's role to determine credibility and to resolve the conflict.'") (quoting *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)). On remand, the ALJ should address this error by properly evaluating the medical evidence and re-assess Plaintiff's functional limitations considering that evaluation and the other medical evidence of record.

The Court will, therefore, remand this matter for further proceedings.

### V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Juan T. Sanchez and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:     **November 29, 2021**                    /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE

17